**TOWNSHIP OF FERGUS FALLS, Appellant,**

v.

**CITY OF FERGUS FALLS, Minnesota Municipal Board, Respondents.**

**No. CX–83–1901.**

Court of Appeals of Minnesota.

Nov. 13, 1984.

Richard L. Pemberton, Fergus Falls, for appellant.

William H. Briggs, Detroit Lakes, for respondent City of Fergus Falls.

Hubert H. Humphrey, III, Atty. Gen., Douglas C. Blomgren, Sp. Asst. Atty. Gen., St. Paul, for respondent Minn. Mun. Bd.

Heard, considered and decided by PARKER, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

RANDALL, Judge.

The township of Fergus Falls appeals from a district court's decision affirming the order of the Minnesota Municipal Board which allowed the city of Fergus Falls to proceed with an annexation of a part of the township without a referendum. We reverse and remand to the board so that a referendum may be held.

## FACTS

On May 2, 1974, the city of Fergus Falls ("city") and the township of Fergus Falls ("township") adopted a joint resolution for orderly annexation of areas within the township. Paragraph nine of that agreement states:

Notwithstanding any other provision of this resolution, if an election would be held in connection with annexation proceedings commenced in the absence of this resolution, that election proceeding shall be held in exactly the same manner with respect to any annexation provided for in this resolution. The election shall be held in accordance with the law of Minnesota governing such annexation elections in effect at the time and if there is no legal requirement for an election, then this agreement shall not be deemed to create one. If the outcome of any election held pursuant to this agreement would prevent annexation in the absence of this resolution and in accordance with the law then in effect, it shall also prevent annexation pursuant to this resolution. It is the intention of the parties to this resolution that no citizen of the town shall be deprived of his right to vote with respect to annexation on account of the adoption of this resolution, if he would be given such right under the law in effect at the future time the annexation might occur, had this resolution not been agreed to and adopted. It is not the intention of the parties to this resolution to create any right to an election if such right would not exist under the law in effect in the future in the absence of this resolution.

Between 1974 and 1981, some areas covered by the terms of the resolution were annexed by the city. No referendum or other election was conducted in connection with those annexations. The record shows there were no objections to those annexations. On January 5, 1981, the city council passed a resolution and petitioned to annex additional portions of the township covered by the agreement. The township filed notice of its opposition to the annexation on April 7, 1981.

The Minnesota Municipal Board ("board") conducted public hearings on this annexation at three times in 1981, during which both opposition to and support of annexation was voiced by township residents. On November 17, 1982, the board conducted annexation deliberations, and tentatively determined to allow annexation without a referendum. The township demanded a meeting with the board, which was held on March 23, 1983. A final order allowing annexation was issued, effective April 27, 1983. The district court affirmed the board's order.

## ISSUE

Was the township entitled to a referendum on the annexation issue under the terms of the orderly annexation agreement?

## ANALYSIS

At the time the orderly annexation agreement was adopted, state law made no provision for a referendum concerning the an-

nexation of areas within a designated area pursuant to a joint resolution. That has not changed. Minn.Stat. § 414.0325 (Supp. 1983). Minn.Stat. § 414.0325 prescribes the procedure to follow in annexing areas pursuant to a joint resolution and makes no mention of a referendum. The section of the statute which provides for annexation without a joint resolution and annexations of *entire towns* (not just designated areas) by joint resolution, however, requires a referendum in all instances of annexations covered by that provision except those where the annexation proceeding was initiated by petition of a majority of the property owners within the area to be annexed or by joint resolution to annex the whole township. Minn.Stat. § 414.031, subd. 5 (1982). Were there no orderly annexation agreement in this case, it is clear that the statute would require a referendum.

The district court found paragraph nine of the annexation agreement ambiguous, and interpreted it by attempting to determine the intent of the parties at the time of contracting. This interpretation was done despite the lack of evidence of the parties' intent in the record. Our examination of paragraph nine finds no ambiguity in the language of the agreement. Resort to the objective intent of the parties to interpret the agreement is therefore improper. *See Tynan v. KSTP, Inc.,* 247 Minn. 168, 182–3, 77 N.W.2d 200, 209, fn. 8 (1956). The agreement clearly states that if an election would be required in the absence of any agreement, then an election is required under the agreement, notwithstanding any other provision of the agreement. Minn.Stat. § 414.031, subd. 5 makes it clear that an election would be required were no agreement in effect. Thus an election is required under the terms of this agreement.

Ordinarily, an annexation pursuant to an orderly annexation agreement does not require an election. The orderly annexation statute, Minn.Stat. § 414.0325, was designed in part to do away with the problem of piecemeal annexations accompanied by the uncertainty of elections. However,

an orderly annexation agreement is a legal contract between the parties to it, and nothing in the statute forbids municipalities from adding a requirement for an election. We find no reason not to accept a detailed contract which preserves citizens' rights to a referendum.

The city argues that on two previous partial annexations pursuant to the agreement the township neither objected nor asked for a referendum. It contends such a failure to object either indicates an understanding by the township that referendums are not called for by the agreement or, in the alternative, if they were, the township's prior acquiescence constitutes a waiver.

The township argues that it had no objections to the two previous partial annexations and, therefore, it would have been illogical to spend township finances to force a referendum. It would have been good practice for the township to document by a resolution, giving the reasons, why it did not ask for a referendum on these earlier partial annexations. However, the township's lack of objection to those two partial annexations cannot be construed as an express waiver of future rights. A governmental body cannot waive its citizens' rights to vote on an annexation where such rights exist. Minn.Stat. § 414.031, subd. 5. Further, requiring a referendum better serves the interests of the affected citizens and is supported in equity and law by the express provisions of paragraph nine of the orderly annexation agreement.

## DECISION

The parties to this orderly annexation agreement contracted to preserve the right to a referendum on annexations pursuant to the agreement.

Reversed and remanded to the municipal board so an election may be held.