WORKE, Judge
Appellants argue that the district court erred by vacating the chief administrative law judge's order approving the City of Proctor's annexation by ordinance. We reverse.
FACTS
In January 2013, respondents City of Duluth and Midway Township entered into an orderly annexation agreement (OA Agreement) and designated certain land in Midway as an Orderly Annexation Area. Midway abuts both Duluth and appellant City of Proctor. The OA Agreement divided the Orderly Annexation Area into three parcels identified as Parcel I, Parcel II, and Parcel III.
Julia Ann (Hovland) Savalas and George Hovland III own approximately 92 acres of real property (the property) located within Parcel II. In May 2014, the owners executed a petition requesting annexation by ordinance to Proctor. In August 2014, Proctor adopted an ordinance to annex the property. Duluth objected to the proposed annexation by ordinance on the grounds that the property is subject to the OA Agreement and was therefore not eligible for annexation by ordinance into Proctor. In October 2014, the chief administrative law judge (chief ALJ) issued an order annexing Parcel I into Duluth. Neither Duluth nor Midway has commenced proceedings to annex Parcel II or Parcel III.
In October 2016, the chief ALJ issued her findings of fact, conclusions of law, and order approving Proctor's annexation by ordinance. Duluth and Midway appealed to the district court, which vacated the chief ALJ's order and determined that once real property is subject to an orderly annexation agreement, that property cannot subsequently be annexed by ordinance. This appeal followed.
ISSUES
Did the district court err by concluding that once parties execute an orderly annexation agreement with respect to a designated area, nonparties cannot subsequently seek to annex real property within the designated area by ordinance?
ANALYSIS
Appellant Office of Administrative Hearings (OAH) and Proctor argue that the district court erred by concluding that Proctor could not annex the property by ordinance because the property was already subject to the OA Agreement between Duluth and Midway.[1] This case involves potential conflict between two statutory schemes for the annexation of real property-annexation by agreement and annexation by ordinance. This court reviews questions of statutory interpretation *462 de novo. Hyatt v. Anoka Police Dep't , 691 N.W.2d 824, 826 (Minn. 2005).
"The object of all statutory interpretation is to ascertain and effectuate the intention of the Legislature." Cocchiarella v. Driggs , 884 N.W.2d 621, 624 (Minn. 2016). First, this court should examine the statutory language to determine whether the law is free from all ambiguity. Id. "A statute is ambiguous only if it is susceptible to more than one reasonable interpretation." 500, LLC v. City of Minneapolis , 837 N.W.2d 287, 290 (Minn. 2013). To determine whether a statute is ambiguous, this court should interpret the statute "as a whole so as to harmonize and give effect to all its parts." 328 Barry Ave., LLC v. Nolan Props. Grp., LLC , 871 N.W.2d 745, 749 (Minn. 2015) (quotation omitted). When the language of a statute is unambiguous, this court applies the statute's plain language and will not "explore its spirit or purpose." Cocchiarella , 884 N.W.2d at 624.
If this court concludes that a statute is ambiguous, then we may consider the factors set forth in Minn. Stat. § 645.16 (2016) to determine legislative intent. Christianson v. Henke , 831 N.W.2d 532, 537 (Minn. 2013). These factors include:
(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of the statute.
Minn. Stat. § 645.16.
Under the annexation-by-agreement statute, one or more townships or municipalities may, through an agreement, designate a certain area as appropriate for annexation. Minn. Stat. § 414.0325, subd. 1(a). The statute defines a "designated area" as "any area which the signatories to a joint resolution for orderly annexation have identified as being appropriate for annexation ... pursuant to the negotiated terms and conditions set forth in the joint resolution." Id. , subd. 1(b). The joint resolution-or agreement-confers jurisdiction on the chief ALJ over annexation in the designated area. Id. , subd. 1(c). Once an agreement is in place, "an annexation of any part of the designated area may be initiated by: (1) submitting to the chief [ALJ] a resolution of any signatory to the joint resolution; or (2) the chief [ALJ]." Id. , subd. 1(e). Subdivision 6 of the annexation-by-agreement statute also states:
An orderly annexation agreement is a binding contract upon all parties to the agreement and is enforceable in the district court in the county in which the unincorporated property in question is located. The provisions of an orderly annexation agreement are not preempted by any provision of this chapter unless the agreement specifically provides so. If an orderly annexation agreement provides the exclusive procedures by which the unincorporated property identified in the agreement may be annexed to the municipality, the municipality shall not annex that property by any other procedure.
Id. , subd. 6.
Under the annexation-by-ordinance statute, a municipal council may by ordinance declare land annexed to the municipality if
the land abuts the municipality and the area to be annexed is 120 acres or less, and the area to be annexed is not presently served by public wastewater facilities or public wastewater facilities are not otherwise available, and the municipality receives a petition for annexation from all the property owners of the land.
*463 Except as provided for by an orderly annexation agreement, this clause may not be used to annex any property contiguous to any property either simultaneously proposed to be or previously annexed under this clause within the preceding 12 months if the property is or has been owned at any point during that period by the same owners and annexation would cumulatively exceed 120 acres.
Minn. Stat. § 414.033, subd. 2(3).[2]
Ambiguity
OAH and Proctor argue that the annexation-by-agreement statute is ambiguous as to whether an annexation agreement trumps an attempt to annex by ordinance. They assert that (1) subdivision 1(e) does not preclude a municipality from annexing part of a designated area by ordinance and (2) the "preemption" clause in subdivision 6 is ambiguous as to whether a valid annexation agreement is binding on nonparties.
Under section 414.0325, subdivision 1(c), an annexation agreement confers the chief ALJ with jurisdiction over annexations in designated areas. Subdivision 1(e) provides two possible mechanisms by which "an annexation of any part of the designated area may be initiated." Minn. Stat. § 414.0325, subd. 1(e) (emphasis added). Under Minn. Stat. § 645.44, subd. 15 (2016), "may" is defined as "permissive." Conversely, "shall" denotes that something is "mandatory." Id. , subd. 16 (2016). As the chief ALJ noted, the statute's use of "may" suggests that there may be other ways to initiate annexation of designated property besides the two processes laid out in subdivision 1(e). To read subdivision 1(e) otherwise would require this court to add the word "only" to that subdivision. This court cannot add words to a statute that the legislature did not include. Genin v. 1996 Mercury Marquis , 622 N.W.2d 114, 119 (Minn. 2001). We conclude that section 414.0325, subdivision 1(e), does not preclude other methods of annexation within a designated area beyond the two methods listed in that subdivision.
OAH and Proctor also argue that the district court erroneously read the "preemption" clause as barring nonparties from initiating annexation by ordinance in a designated area. The second sentence of subdivision 6 states that "[t]he provisions of an orderly annexation agreement are not preempted by any provision of this chapter unless the agreement specifically provides so." Minn. Stat. § 414.0325, subd. 6. OAH acknowledges that one could reasonably read this sentence to mean that the terms of an annexation agreement supersede an attempt to annex by ordinance. However, to determine whether a statute is ambiguous, this court interprets the statute "as a whole so as to harmonize and give effect to all its parts." 328 Barry Ave., LLC , 871 N.W.2d at 749 (quotation omitted).
The first sentence of subdivision 6 states that "[a]n orderly annexation agreement is a binding contract upon all parties to the agreement ...." Minn. Stat. § 414.0325, subd. 6 (emphasis added). The third sentence of subdivision 6 states, "If an orderly annexation agreement provides the exclusive procedures by which the unincorporated property identified in the agreement may be annexed to the municipality, the *464 municipality shall not annex that property by any other procedure." Id. (emphasis added). Both the first and third sentences of subdivision 6 suggest that the purpose of that subdivision is to ensure that parties to annexation agreements are bound by them and cannot attempt to annex land by alternative means unless the agreement provides otherwise. The second sentence is silent as to whether its preemption mandate applies only to parties to an annexation agreement or if nonparties are bound as well. Because this court must look to the statute as a whole to determine ambiguity, rather than a single sentence in isolation, we conclude that subdivision 6 is ambiguous as to whether an annexation agreement is binding only upon parties to that agreement or whether the agreement restricts the rights of nonparties as well. Therefore, we must use other tools to determine legislative intent.
Under section 414.01, subdivision 1a(5) (2016), "joint resolutions for orderly annexation ... should be encouraged." However, that does not necessarily imply that these agreements are binding upon nonparties. Encouraging orderly annexation agreements is equally consistent with OAH and Proctor's reading of the annexation-by-agreement statute-once parties have entered into an agreement, they cannot circumvent the agreement by pursuing annexation by alternative means.
In 2002, the Minnesota House of Representatives Local Government and Metropolitan Affairs Committee discussed the bill that added the preemption language in section 414.0325, subdivision 6 (2004). The bill's author, Representative Howes, described it as follows: "What this bill does is an agreement between the city and the township, it basically makes it a binding contract and both parties have to adhere to that." Hearing on H.F. No. 1620 Before H. Comm. on Local Gov't & Metro. Affairs (Feb. 20, 2002). Representative Howes then introduced Kent Sulem from the Minnesota Association of Townships, who described the bill as follows:
[I]t is just clarifying that when [orderly annexation] agreements are entered into between a city and a township ... that agreement will be binding, that there won't be any loopholes that either side can use, that the two parties ... will honor their word as entered into in that orderly agreement.
Id. Sulem also stated that the added language of subdivision 6 "just simply clarifies a problem that has arisen because of some old case law that exists." He then explained that he believed the added language was necessary because "there is case law involving the City of La Crescent versus the City of-the Township of La Crescent versus the City of La Crescent that found that despite the existence of an orderly annexation agreement, the property subject to that agreement could be annexed via other means." Id.
In LaCrescent Twp. v. City of LaCrescent , the Township of LaCrescent and the City of LaCrescent entered into an orderly annexation agreement with respect to certain township property. 515 N.W.2d 608, 609 (Minn. App. 1994). Later, the owners of land located within an area governed by the agreement and the city petitioned for annexation of land by ordinance. Id. This court addressed the conflict between the annexation-by-agreement and annexation-by-ordinance statutes, determining that now-repealed subdivision 2a of section 414.0325"d[id] not require annexation by ordinance to comply with the terms of a previously existing annexation agreement." Id. at 610. This court ultimately held that the City of LaCrescent's annexation by ordinance was valid even though it did not comply with the prior annexation agreement to which it was a party. Id. at 611.
*465 Reading the legislative committee testimony together with LaCrescent , we discern that the legislative intent behind section 414.0325, subdivision 6, was to prevent parties to an annexation agreement from later reneging on that agreement and annexing by ordinance land that was subject to the agreement. LaCrescent does not address attempts to annex by ordinance by nonparties to an annexation agreement, and the legislative history indicates that the legislature was concerned with ensuring that parties to annexation agreements could not later attempt to circumvent those agreements.
Furthermore, Duluth and Midway's reading of subdivision 6 would lead to absurd results. See Am. Fam. Ins. Grp. v. Schroedl , 616 N.W.2d 273, 278 (Minn. 2000) (stating that "courts should construe a statute to avoid absurd results and unjust consequences."). Under Duluth and Midway's interpretation, parties to an orderly annexation agreement could, by inserting language to that effect, avoid the jurisdictional limits of section 414.0325, subdivision 1, the public notice requirements of section 414.0325, subdivision 1b, or the right to appeal to the district court set out in section 414.07, subdivision 2 (2016). If this had been the legislature's intent in including the preemption language in subdivision 6, it would have spoken far more clearly.
Applying the canons of statutory construction, we conclude that section 414.0325, subdivision 6, does not preclude a nonparty to an orderly annexation agreement from seeking to annex real property within the designated area by ordinance.
DECISION
Because section 414.0325 does not preclude nonparties to orderly annexation agreements from annexing land within designated areas by ordinance, we conclude that the district court erred by vacating the chief ALJ's order for annexation.
Reversed.

Proctor also argues that the district court correctly determined that it satisfied the statutory requirements for annexation by ordinance. The district court ruled in favor of Proctor, however, and neither Duluth nor Midway appealed this element of the district court's ruling. "The function of the court of appeals is limited to identifying errors and then correcting them." Sefkow v. Sefkow , 427 N.W.2d 203, 210 (Minn. 1988). Because no aggrieved party appealed from this determination, this issue is not properly before this court.

We cite the most recent version of Minn. Stat. § 414.033 because it has not been amended in relevant part. See Interstate Power Co. v. Nobles Cty. Bd. of Comm'rs , 617 N.W.2d 566, 575 (Minn. 2000) (stating that, generally, "appellate courts apply the law as it exists at the time they rule on a case"). For the same reason, we also cite the current versions of other statutes cited in this opinion.