Doug KRAMER, et al., Petitioners, Respondents,

·v.

**OTTER TAIL COUNTY BOARD OF COMMISSIONERS, Appellant.**

No. C5–01–2082.

Court of Appeals of Minnesota.

June 18, 2002.

Dennis W. Hagstrom, Svingen, Athens, Russell, Hagstrom, Haugrud, Karkela & Cline, P.L.L.P., Fergus Falls, MN, for respondents.

Stephen G. Andersen, Ratwik, Roszak & Maloney, P.A., Minneapolis, MN, for appellant.

Considered and decided by SHUMAKER, Presiding Judge, WILLIS, Judge, and PORITSKY, Judge.

## OPINION

PORITSKY, Judge.*

The district court granted respondents' petition for a writ of mandamus, compelling appellant Otter Tail County (the county) to approve a preliminary plat for a new subdivision. On appeal, the county argues: (1) because respondents' sole remedy was by a writ of certiorari to the court of appeals, the district court did not have jurisdiction to issue a writ of mandamus; and (2) the 60–day deadline imposed by Minn.Stat. § 15.99, subd. 2, was extended by operation of Minn.Stat. § 116D.04, subd. 10 (2000), which provides for a 30–day period in which to seek judicial review of an agency decision involving environmental-assessment worksheets (EAW's) and environmental-impact statements (EIS's).

## FACTS

In November 1998, respondents filed an application for a conditional-use permit (CUP) and requested preliminary approval of the plat for a shorefront resort development. Certain individuals filed a petition with the county, asking for an EAW to determine if an EIS was necessary. After examining the completed EAW, on May 17, 2000, the county planning commission

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

found that an EIS was not necessary, and on May 23, 2000 the county board declared that an EIS was not needed. The county planning commission met on August 9, 2000 and recommended denying respondent's plat. The county board adopted the recommendation on August 15, 2000. Respondents sought a writ of mandamus in district court, arguing that because the county did not to approve or deny respondents' application within 60 days after the EIS was determined unnecessary, the application was granted by operation of law. The district court ruled that respondents' application was approved because the county failed to deny it within the time limit and issued a writ of mandamus. The county appealed to this court.

## ISSUES

I. Did the district court have jurisdiction to issue a writ of mandamus?

II. Did the 30–day time period provided by Minn.Stat. § 116D.04 to appeal the county's decision to deny an EIS run concurrently with the 60–day time limit for the county to take action under Minn.Stat. § 15.99 (2000)?

## ANALYSIS

### I.

We first address the county's second argument: The county argues that its failure to act on respondents' request within 60 days after the county board declared that an EIS was not necessary did not amount to an approval of respondents' application. Although the county raises this as its second argument, we address it first because our decision on this issue determines the county's first argument. The county contends that the 60–day time period did not start to run until 30 days after the board determined an EIS was not necessary.

■ An agency must approve or deny a request relating to zoning within 60 days, or it is approved by default. Minn.Stat. § 15.99 subd. 2 (2000). But the time limit is extended "if a state statute * * * requires a process to occur before the agency acts on the request." *Id.* at subd. 3(d). In such a case, the deadline for the agency to act is extended to 60 days after completion of the last process required by the statute. Here, the county board ordered an EAW. An EAW is prepared to determine if an EIS is necessary because there may be potential for significant environmental effects if the permit is granted. Minn.Stat. § 116D.04, subd. 2a (2000).

On May 23, 2000, the county board declared that an EIS was not necessary. The county cites Minn.Stat. § 116D.04, subd. 10, which grants the 30–day period for seeking judicial review of that declaration, and argues that the 60–day period allowed by section 15.99 did not start until the 30–day period was over. Section 15.99, subd. 3(d), reads:

> The time limit in subdivision 2 is extended if a state statute * * * *requires a process to occur* before the agency acts on the request, and the time periods prescribed in the state statute * * * make *it impossible to act* on the request within 60 days. In cases described in this paragraph, the deadline is extended to 60 days after completion of the last process required in the applicable statute[.]

(Emphasis added.)

Specifically the county argues that the 30–day period for seeking judicial review of its May 23, 2000, declaration that an EIS was not necessary is a "process" within the meaning of section 15.99, subd. 3(d). We disagree. Section 116D.04, subd. 10, does not *require* a judicial review; it allows such a review. Moreover, there is

nothing in the record to suggest that even if the county waited the 30 days, it would be impossible to act on respondents' request within 60 days. In fact, initially the county planning commission scheduled a final hearing on respondents' application for July 19, but, as the trial court found,

> [f]or reasons that are not set forth by the parties, the * * * Planning Commission chose not to meet on July 19, 2000, and the final hearing relative to [respondent's] application occurred on August 9, 2000,

which was beyond the 60-day limit. Finally, as respondents argue, under section 15.99, subd. 3(f), the county could have extended the 60-day limit by merely giving notice to respondents. *See American Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 314 (Minn.2001) ("The statute does not limit the application of subdivision 3(f) to extenuating circumstances—it merely requires that the reasons [for extending the 60-day limit] be stated.")

Accordingly, we conclude that (1) the 30-day appeal period granted by section 116D.04, subd. 10, runs concurrently with the 60-day time limit granted by section 15.99, subd. 2, and (2) therefore the county was mandated to grant respondents' application for approval of the preliminary plat.

## II.

■ Next we address the county's argument that the district court was without jurisdiction to issue a writ of mandamus. Jurisdiction is a legal question, which this court reviews de novo. *Frost–Benco Elec. Ass'n v. MN Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

■ Mandamus is an extraordinary legal remedy that courts issue only when the petitioner shows that there is "a clear and present official duty to perform a certain act." *McIntosh v. Davis*, 441 N.W.2d 115, 118 (Minn.1989); Minn.Stat. § 586.01

(2000) ("The writ of mandamus may be issued to any * * * board * * * to compel the performance of an act which the law specifically enjoins * * *.") To be entitled to mandamus relief the petitioner must show three elements: (1) the failure of an official to perform a duty clearly imposed by law; (2) a public wrong specifically injurious to petitioner; and (3) no other adequate remedy. *Demolition Landfill Services, L.L.C. v. City of Duluth*, 609 N.W.2d 278, 280 (Minn.App.2000), *review denied* (Minn. July 25, 2000).

■ 1. As we have concluded, the county was required to approve or deny respondents' application within 60 days. It did not do so, and respondents' application was approved by operation of law. The county's refusal to approve the plat was therefore a failure to perform an official duty clearly imposed by law.

2. The county's action injured respondents because they were unable to develop their resort.

3. It is not enough that the county failed to act and that respondents were injured; respondents must also show that they have no other "plain, speedy, and adequate remedy in the ordinary course of law." Minn.Stat. § 586.02 (2000). The county contends that a writ of certiorari to this court is the appropriate procedure to review the county's denial of respondents' application. Because there was an adequate alternative remedy, the county argues, mandamus is not available. But because a complete record must be provided, a writ of certiorari to this court is more expensive, more time-consuming, and more complicated than a petition to the district court for a writ of mandamus. *See Dozler v. Conrad*, 3 Neb.App. 735, 532 N.W.2d 42, 48 (1995) (citing 52 Am.Jur.2d *Mandamus* § 49 at 374 (1970)) ("Furthermore, the remedy which will preclude mandamus

must be equally as convenient, complete, beneficial, and effective as would be mandamus, and be sufficiently speedy to prevent material injury.") For these reasons, we conclude that a writ of certiorari is not an adequate remedy and, therefore, respondents were entitled to a writ of mandamus. *See Demolition,* 609 N.W.2d at 280; *see also American Tower, L.P. v. City of Grant,* 621 N.W.2d 37, 41–3 (Minn. App.2000) (writ of mandamus requiring city to issue CUP proper after city failed to act in time), *aff'd,* 636 N.W.2d 309 (Minn.2001).

## DECISION

The 30–day appeal period granted by Minn.Stat. § 116D.04, subd. 10, in which to seek judicial review of a decision concerning the need for an environmental impact statement, runs concurrently with the 60–day period granted by Minn.Stat. § 15.99, subd. 2, within which an agency must deny a request relating to zoning. Because the county was required by law to grant respondents' request for approval of a preliminary plat, a writ of certiorari was not an adequate remedy, and therefore the district court properly granted respondents a writ of mandamus.

**Affirmed.**