Richard BREZA, Respondent,

v.

CITY OF MINNETRISTA, Appellant.

No. A04–2286.

Court of Appeals of Minnesota.

Nov. 29, 2005.

Gary A. Van Cleve, Jessica B. Rivas, Larkin Hoffman Daly & Lindgren, Ltd., Minneapolis, MN, for respondent.

George C. Hoff, Justin L. Templin, Hoff, Barry & Kuderer, P.A., Eden Prairie, MN, for appellant.

Susan L. Naughton, League of Minnesota Cities, St. Paul, MN, for Amicus Curiae.

Considered and decided by PETERSON, Presiding Judge; HALBROOKS, Judge; and WRIGHT, Judge.

## OPINION

HALBROOKS, Judge.

Appellant challenges the district court's decision to grant respondent's petition for a writ of mandamus. Appellant contends that the district court lacked subject-matter jurisdiction to consider respondent's petition because respondent did not appeal to the Board of Water and Soil Resources (BWSR) before petitioning the district court for a writ of mandamus. But because appellant failed to make a decision on respondent's exemption application within 60 days, as required by Minn.Stat. § 15.99 (2004), appellant lost the ability to act on that application. Therefore, respondent was not required to appeal to the BWSR, and the district court had subject-matter jurisdiction. Appellant also argues that the district court erred in finding that it has the authority to grant respondent a wetland exemption in the amount of 5,737 square feet. Under the applicable statutes, we conclude that appellant's authority to grant respondent an exemption was limited to a maximum of 400 square feet. We affirm the district court on the issue of subject-matter jurisdiction, but reverse the district court's decision with respect to the application of Minn.Stat. § 15.99.

## FACTS

During the summer of 2000, respondent Richard Breza filled 5,737 square feet of wetland on his property in Minnetrista. It is undisputed that pursuant to Minn.Stat. §§ 103G.221–.2242 (2004), a permit was required to fill this wetland and that Breza did not obtain one before he acted. In the fall of 2000, a DNR officer observed the fill on Breza's land; the officer informed Breza that he would receive a cease-and-desist order in the mail and that in order to avoid having to remove the entire amount of fill, Breza needed to file for an exemption. In December 2000, Breza received the cease-and-desist order, which contained a wetland-exemption application. He then completed the application and sent it to appellant City of Minnetrista (city).

Breza did not receive any response from the city regarding his application until January 2002, at which time the city advised him that his application could not be accepted because the Wetland Conservation Act measures impact to wetlands by area of fill, not volume, as Breza had described it. In June 2002, Breza's attorney wrote to the city, stating that, because it failed to deny Breza's application within 60 days, the application was approved by operation of law under Minn.Stat. § 15.99, subd. 2 (2004). The city responded in July 2002, conceding that it had failed to respond to Breza's application within 60 days and informing Breza that the only exemption legally permissible was a de minimis exemption of 400 square feet under Minn. R. 8420.0122, subp. 9(A)(5) (2005). The city further advised Breza that the decision would be final unless appealed to the BWSR within 15 days of the date of mailing of the notice.

Breza contends that the entire area filled—5,737 square feet—should have been approved as a consequence of the city's failure to deny his application within 60 days. Breza sought review of his application at a city-council meeting in February 2003. The city council affirmed the decision to grant Breza a maximum exemption of 400 square feet. Breza then petitioned the district court for a writ of mandamus to compel the city to approve Breza's exemption application for 5,737 square feet.

The district court denied the parties' motions for summary judgment and held a bench trial on the merits of Breza's petition. The district court granted the writ because it found that Breza's exemption

application was for the full 5,737 square feet and that, as a result of the city's failure to act within the statutorily provided time frame of 60 days, the full extent of Breza's application was approved by operation of law. This appeal follows.[1]

## ISSUES

1. Did the district court have subject-matter jurisdiction to consider Breza's challenge to the city's wetland-exemption decision?

2. Did the district court err in granting a writ of mandamus compelling the city to grant Breza a wetland exemption for 5,737 square feet?

## ANALYSIS

### I.

■ Whether a district court has "subject-matter jurisdiction is a question of law, which we review de novo." *In re Thulin*, 660 N.W.2d 140, 143 (Minn.App. 2003). Various statutes and administrative rules govern the granting of wetland exemptions. *See, e.g.,* Minn.Stat. § 103G.2242 (2004); Minn. R. 8420.0100–.0290 (2005).[2] And statutory construction[3] is a legal question subject to de novo review. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn. 1998).

■ Minn.Stat. § 103G.2242, subd. 4, states that "[u]pon receiving and considering all required data, the local government unit reviewing ... exemption ... requests must act on all ... exemption ... requests in compliance with section 15.99." Minn. Stat. § 15.99, subd. 2(a) (2004), provides, in pertinent part, that

> notwithstanding any other law to the contrary, an agency must approve or deny within 60 days a written request relating to zoning, septic systems, or expansion of the metropolitan urban service area for a permit, license, or other governmental approval of an action. Failure of an agency to deny a request within 60 days is approval of the request.

Application of Minn.Stat. § 15.99 (2004) under these circumstances is a case of first impression.

It is undisputed that Breza applied to the city on December 29, 2000, for a wetland exemption and that the city did not act within the requisite 60 days. Thus, as of February 28, 2001, Breza's application was approved by operation of law. *See* Minn.Stat. § 15.99, subd. 2(a). In January 2002, approximately 11 months after the 60-day time frame expired, the city first contacted Breza. In July 2002, approximately 16 months after the 60-day time limit expired, the city conceded that, due to its failure to act within 60 days, Breza's application was approved by operation of

1. In his brief, Breza raises as an issue the propriety and independence of the amicus brief that was written by an attorney for the League of Minnesota Cities because the League also provided an attorney for the city in the district court. The amicus application was properly made under Minn. R. Civ.App. P. 129.01, and Breza did not make a proper motion to strike the amicus brief under Minn. R. Civ.App. P. 127. Moreover, it is this court's practice to freely grant amicus applications to ensure the development of a more complete appellate record.

2. The Legislature has not altered the substance of the statutes or the administrative rules since 2000–01, the time frame in which Breza filled the wetland and applied for this exemption.

3. Minn.Stat. § 645.001 (2004) states that principles of statutory interpretation also apply to rules.

law, but only as to 400 square feet, the maximum exemption permitted by statute.[4]

The city argues that, due to Breza's failure to appeal its July 2002 decision to the BWSR within 30 days,[5] that exemption determination was final. We disagree, because Breza's application was approved by operation of law as of February 28, 2001. Once an application is approved by operation of law under Minn.Stat. § 15.99, subd. 2, the local government unit (LGU) loses jurisdiction over the application, and any attempt thereafter to act on the application is invalid. As a result, the city did not make a decision that Breza could appeal to the BWSR. Neither of the January 2002 or July 2002 letters that the city sent to Breza constituted appealable decisions made by the city because they were well beyond the 60-day time limit. Thus, the district court had subject-matter jurisdiction to consider Breza's petition for a writ of mandamus.

## II.

To determine whether the district court erred in granting Breza's petition for a writ of mandamus, we must analyze whether the city had the authority to grant Breza an exemption for 5,737 square feet, whether mandamus was appropriate under these circumstances, and if the district court erred in finding that Breza applied for an exemption in the amount of 5,737 square feet. If the city lacked the authority to grant an exemption for 5,737 square feet, we need not reach the related issue of the amount of exemption Breza applied for.

## A. The scope of the city's authority

Minnesota Rules chapter 8420 (2005) governs wetland conservation, including fill exemptions. A provision of that rule states that, "[t]he local government unit decision *shall* be based on the exemption standards in part 8420.0122." Minn. R. 8420.0210 (emphasis added). The standards provide ten different exemptions that depend on a number of variables, including the type of wetland being filled and the purpose for the fill. Minn. R. 8420.0122, subps. 1–10. In this case, it is undisputed that the wetland at issue is a Type 3 wetland. The only statutory exemption to which an individual filling a Type 3 wetland is entitled, without satisfying one of the enumerated purposes (e.g., agricultural activities, drainage, etc.), is a de minimis exemption. Minn. R. 8420.0122, subp. 9. A de minimis exemption is 400 square feet. *Id.*, subp. 9(A)(5).

Breza argues that *Moreno v. City of Minneapolis,* 676 N.W.2d 1 (Minn.App. 2004), supports his position that he is entitled to an exemption for 5,737 square feet. In *Moreno,* the Minneapolis Institute of Art applied to the city for an amendment to its planned-unit development. 676 N.W.2d at 3–4. The city had the authority

---

**4.** For discussion and analysis of this statute, see, *infra* section II.A.

**5.** "Appeal of a[n] ... exemption ... may be obtained by mailing a petition ... to the board within 30 days after the postmarked date of the mailing [of the summary of approval or denial.] If appeal is not sought within 30 days, the decision becomes final." Minn.Stat. § 103G.2242, subd. 9(a). Further, [t]he decision of a local government unit to approve, approve with conditions, or reject

a[n] ... exemption ... becomes final if not appealed to the board within 30 days after the date on which the decision is mailed.... This subpart applies to those determinations which are made under comprehensive wetland protection and management plans. Minn. R. 8420.0250, subp. 1. The board referred to in these sections is the BWSR. Minn.Stat. § 103G.005, subd. 6a (2004).

to grant the entire application. *Id.* Thus, the city's failure to act on the application within 60 days resulted in full approval of the application. *Id.* at 6.

But those are not the facts before us. Because the city did not have the authority to grant Breza's application for a 5,737 square-foot exemption if it had acted during the 60 days, its inaction cannot serve to approve it. Thus, *Moreno* is inapposite.

Breza cites *Gun Lake Assoc. v. County of Aitkin*, 612 N.W.2d 177 (Minn.App. 2000), for the proposition that, when an application has been approved by operation of law, regardless of what the application was for, approval cannot be considered an error of law. We disagree. In *Gun Lake*, a residents' association opposed a planning commission's "approval" of a conditional-use permit (CUP) (the planning commission did not actually approve the CUP; it missed the 60-day deadline) and appealed the "approval" to the county board. 612 N.W.2d at 179–80. The allegations made by the residents' association were that the county board's decision denying its appeal "was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law or without evidentiary support." *Id.* at 182. On review, this court stated that those allegations were erroneous because the approval of the CUP was compelled by operation of law, given that the planning commission failed to approve or deny it within 60 days. *Id.* Thus, the county board's denial of the appeal was the appropriate action, because the result, essentially affirming the "approval" of the CUP, was compelled by statute. *Id.*

As previously stated, statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr.*, 584 N.W.2d at 393. The statutory language is clear and unambiguous that the LGU, in this case the city, must base its

exemption decisions on the standards provided in the rules. And the only exemption that applies to Breza is the de minimis exemption. Therefore, the city lacks the authority to grant an exemption to Breza that is more than 400 square feet.

Breza asserts that the language "notwithstanding any other law to the contrary" contained in the first sentence of Minn.Stat. § 15.99, subd. 2, qualifies the second sentence of that section. Thus, under Breza's reasoning, any application, for literally any action made by an individual to an LGU, regardless of whether the LGU has the authority to grant such application, is deemed automatically approved by operation of law if the LGU fails to act within 60 days. But this interpretation of the statute leads to an absurd and unreasonable result. *See* Minn.Stat. § 645.17 (2004) ("legislature does not intend a result that is absurd, impossible of execution, or unreasonable").

■ To conclude as Breza urges that the legislature intended Minn.Stat. § 15.99 to supersede every statute that grants specific, limited authority to an agency would give agencies the ability to indirectly approve applications that they do not have direct authority to approve by simply failing to make a decision within 60 days. We conclude that Minn.Stat. § 15.99 is a timing statute. *See Manco of Fairmont, Inc. v. Town Bd. of Rock Dell Twp.*, 583 N.W.2d 293, 296 (Minn.App.1998) (stating that "the underlying purpose ... is to keep government agencies from taking too long in deciding"). It does not alter the underlying statutory authority of an agency to approve an application. The phrase "notwithstanding any other law to the contrary" is contained in the first sentence of Minn.Stat. § 15.99, subd. 2. It does not qualify the second sentence; it only applies to the sentence that it is in. Therefore, the time requirement contained in Minn.

Stat. § 15.99 is applicable when compared with a timing provision contained in the underlying substantive statutes.

Thus, if an LGU does not have the underlying authority to approve an application within the 60 days, the application cannot be approved by the LGU's inaction. Here, the city only had the authority to grant Breza an exemption of 400 square feet.[6] Therefore, as a result of the city's inaction and violation of the timing statute, that is the only exemption that was approved by operation of law.

## B. Mandamus

■■■ We will reverse a district court's order on a petition for mandamus relief "only when there is no evidence reasonably tending to sustain the trial court's findings." *Coyle v. City of Delano*, 526 N.W.2d 205, 207 (Minn.App.1995). "When the district court's decision on a petition for a writ of mandamus is based solely on a legal determination, this court reviews that decision de novo." *Nolan & Nolan v. City of Eagan*, 673 N.W.2d 487, 493 (Minn. App.2003), *review denied* (Minn. Mar. 16, 2004). "Mandamus is an extraordinary legal remedy that courts issue only when the petitioner shows that there is 'a clear and present official duty to perform a certain act.'" *Kramer v. Otter Tail County Bd. of Comm'rs*, 647 N.W.2d 23, 26 (Minn.App. 2002) (quoting *McIntosh v. Davis*, 441 N.W.2d 115, 118 (Minn.1989)). "To be entitled to mandamus relief the petitioner must show three elements: (1) the failure of an official to perform a duty clearly imposed by law; (2) a public wrong specifically injurious to petitioner; and (3) no other adequate remedy." *Id.* (citing *Demolition Landfill Servs., L.L.C. v. City of*

*Duluth*, 609 N.W.2d 278, 280 (Minn.App. 2000), *review denied* (Minn. July 25, 2000)).

■■■ Breza relies on *Kramer* for the proposition that, under these circumstances, a writ of mandamus from the district court is appropriate. Breza is correct that seeking a writ of mandamus for a Minn.Stat. § 15.99 violation is a possible remedy. But his reliance on *Kramer* under these circumstances is misplaced because *Kramer* is distinguishable.

*Kramer* applied for a plat from the county planning commission, and the commission failed to approve or deny the plat application within the requisite 60 days. *Id.* at 24–25. The commission then attempted to deny the application after the 60–day time limit had expired. *Id.* As a result of the commission's failure to act, the application was approved by operation of law. *Id.* at 26. Nevertheless, the commission continued to deny the application. *Id.*

*Kramer* filed a petition for a writ of mandamus in the district court to compel the commission to approve his plat application as Minn.Stat. § 15.99 required the commission to do. *Id.* at 25. The district court granted the writ, stating that "the county was required to approve or deny [Kramer's] application within 60 days. It did not do so, and [Kramer's] application was approved by operation of law. The county's refusal to approve the plat was therefore a failure to perform an official duty clearly imposed by law." *Id.* at 26.

Because the county's persistent refusal to grant Kramer's application after the 60 days had elapsed was a "failure of an official to perform a duty clearly imposed

**6.** It should be noted, however, that this exemption amount is the maximum amount that Breza is entitled to without filing an after-the-fact wetland permit application to the city, proposing an alternative mitigation plan for the remaining impacts. If the application were approved, Breza would be able to keep more than 400 square feet of fill.

by law," a writ of mandamus compelling it to approve the application was appropriate. *Id.* Here we have no such failure. The city concedes that it failed to act on Breza's exemption application within 60 days. It further concedes that, as a result of its failure to act, Breza's application was approved by operation of law. In fact, the city acknowledges that Breza has an exemption for 400 square feet. Although the parties dispute whether that amount is correct, the city is not, like the county in *Kramer,* refusing to acknowledge that some part of Breza's exemption application is approved.

Because the city does not have the authority to grant Breza an exemption for more than 400 square feet, the city has fully satisfied its official duties. Therefore, under these circumstances, mandamus is not appropriate, and the district court erred by granting Breza's petition.

Because the city lacked the authority to grant Breza an exemption larger than 400 square feet, we need not reach the issue of the extent of Breza's exemption application or whether the district court erred by finding that he applied for an exemption of 5,737 square feet.

## DECISION

Because the city failed to approve or deny Breza's exemption application within 60 days, it was approved by operation of law under Minn.Stat. § 15.99 (2004), and the city lost the ability to act on the application. Therefore, the city did not make a decision that Breza could appeal to the BWSR, and the district court had subject-matter jurisdiction to consider Breza's petition for a writ of mandamus. But because the city did not possess the authority to approve Breza's exemption application in an amount greater than 400 square feet,

the district court erred in granting Breza's petition for a 5,737 square foot exemption.

**Affirmed in part and reversed in part.**